# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
        Plaintiff,

v.                                Case No. 04-CR-55

**JEFFERY BEAMON,**
        Defendant.

## SENTENCING MEMORANDUM

Defendant Jeffery Beamon pleaded guilty to distribution of five grams or more of cocaine base, 21 U.S.C. § 841(b)(1)(B), and felon in possession of a firearm, 18 U.S.C. § 922(g). The probation office prepared a pre-sentence report ("PSR"), which determined that defendant's offense level ("OL") was 30 and his criminal history category ("CHC") III, producing an imprisonment range of 121-151 months under the advisory sentencing guidelines. Because the government had filed an information pursuant to 21 U.S.C. § 851, alleging that defendant had a prior felony drug conviction, he faced a statutory imprisonment term of 10 years to life on the drug distribution count.[1]

Defendant made two objections to the guideline calculations, and the government moved for a downward departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) based on defendant's substantial assistance. Finally, defendant requested a non-guideline sentence based on his community service and family situation, and the disparity between the penalties for crack and powder cocaine. The government opposed such reduction, arguing that the court could sentence defendant below the statutory mandatory minimum

---

[1] Felon in possession carries a statutory maximum prison term of 10 years. 18 U.S.C. § 924(a)(2).

based only on his substantial assistance. See 18 U.S.C. § 3553(e). In this memorandum I address the parties' contentions. I first set forth the appropriate sentencing procedure.

## I. SENTENCING PROCEDURE

In light of United States v. Booker, 125 S. Ct. 738 (2005), I typically follow a three-step sentencing process. First, I determine the applicable advisory guideline range. Second, I determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range clearly apply. Finally, I determine the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Pallowick, 364 F. Supp. 2d 923, 925-26 (E.D. Wis. 2005).

## II. APPLICATION

**A.      Guideline Calculations**

The PSR determined that the base OL for the drug distribution count was 32 because defendant sold two ounces of crack (52.7 grams) to a confidential information ("CI") on 8/7/01 and negotiated the sale of one ounce (28.35 grams) to the same CI on 9/20/01, for a total of 81.05 grams. Under U.S.S.G. § 2D1.1(c)(4), offenses involving 50-150 grams of cocaine base carry an OL of 32. The PSR set the base OL for the firearm possession count at 20 because defendant had a prior controlled substance offense. U.S.S.G. § 2K2.1(a)(4)(A). The PSR then recommended a 4 level enhancement under § 2K2.1(b)(5) because defendant possessed the firearm in connection with another felony offense, i.e. an alleged altercation outside a bar during which defendant struck a man with the gun and fired in the air. Finally, the PSR combined the two counts under § 3D1.4, which produced an

2

adjusted OL of 33.  After subtracting 3 levels for acceptance of responsibility, § 3E1.1, the PSR set the final OL at 30.

Defendant objected to the PSR's drug weight determination and to the § 2K2.1(b)(5) enhancement.  I agreed that the PSR properly set the count one base OL at 32 based on a weight of 50-150 grams of crack.  In the plea agreement, defendant admitted that the controlled buy completed on 8/7/01 was to involve two ounces.  According to the guidelines, two ounces equals 56.7 grams.  U.S.S.G. § 2D1.1 cmt. n.10.  The FBI found that the drugs weighed 52.7 grams.  As defendant noted, at a later date the state crime lab found that the crack weighed 29 grams.  However, as the PSR stated without specific objection the latter figure likely resulted from evaporation of liquid from the crack, which was of poor quality.  Therefore, based on this transaction alone the drug weight was 50-150 grams.  Further, I found that the attempted sale of one ounce, or 28.35 grams, to the CI on 9/20/01 was relevant conduct under § 1B1.3(a)(2) because it constituted the same course of conduct. See U.S.S.G. § 2D1.1 cmt. n.12.  It involved the same CI, within about one month of the previous transaction, at about the same price.  Adding that amount, the drug weight was over 50 grams even if I accepted the state crime lab's weight for the first transaction.  Therefore, I found that the government had shown that the drugs weighed more than 50 grams, and the base OL for count one was 32.

However, I concluded that the government had not proven the § 2K2.1(b)(5) enhancement.  Under § 2K2.1(b)(5), if the defendant used or possessed any firearm or ammunition in connection with another felony offense his offense level increases by 4. Application note 4 explains: "'Felony offense,' as used in subsection (b)(5), means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year,

3

whether or not a criminal charge was brought, or conviction obtained." U.S.S.G. § 2K2.1 cmt. n.4. The PSR based the enhancement on the unsworn statements of unidentified witnesses who said that defendant struck a man with a pistol outside a bar and fired in the air. Defendant denied the allegation. The PSR reported that defendant's father stated that he was at the bar, and defendant was about to be jumped by 12 to 15 men and defended himself. However, defendant's father made no mention of the gun. I found the evidence was insufficient to show that defendant committed an offense with the gun. See United States v. Hurlich, 293 F.3d 1223, 1227 (10th Cir. 2002) (holding that a "vague, unsworn statement by an unidentified witness in the presentence report was insufficient to constitute a preponderance of the evidence" justifying the enhancement). I noted that under application note 4 it was relevant, though not dispositive, that the state did not charge this offense despite the apparent presence of cooperative witnesses. The presence of shell casings outside the bar, as the PSR also noted, did not necessarily show that defendant fired the gun. Under all of the circumstances, I concluded that another felony offense had not been proven.

Thus, I found that the advisory guidelines were OL 29,[2] CHC III, and 108-135 months imprisonment, with a 120 month statutory mandatory minimum on count one and 120 month statutory maximum on count two.

---

[2]Because without the § 2K2.1(b)(5) enhancement the OL for count two dropped to 20, that count had no effect on the adjusted OL under § 3D1.4. Thus, the final OL was 29 (base OL 32 minus 3 for acceptance).

4

**B.      Substantial Assistance Motion**

The government moved under § 5K1.1 and 3553(e) for a 20% reduction in defendant's sentence based on his substantial assistance in the prosecution of others. In ruling on such a motion, the court may consider the following factors and any others related to the defendant's cooperation:

(1) the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n. 3; see also United States v. Winters, 117 F.3d 346, 349 (7th Cir. 1997), but the extent of any departure granted is within the court's discretion, see United States v. Newman, 148 F.3d 871, 875 n.2 (7th Cir. 1998). In considering these motions, I typically employ the method suggested in United States v. Thomas, 930 F.2d 526, 531 (7th Cir. 1991), overruled on other grounds by United States v. Canoy, 38 F.3d 893 (7th Cir. 1994), awarding a 2 level adjustment for each § 5K1.1 factor found to be fully present, see, e.g., United States v. Washington, 293 F. Supp. 2d 930, 934 (E.D. Wis. 2003).

5

### 1. Significance and Usefulness

According to the government, the defendant provided significant information in three matters. First, he provided information about the location of a homicide suspect, leading to that person's arrest. Second, he arranged for the delivery of five pounds of marijuana, leading to the arrest and charging of one individual in state court. Third, he provided first hand information that led to the search of a residence where police seized two ounces of crack cocaine and arrested one individual. He also debriefed and provided other information, which had not yet proved useful. Because defendant's information had proven significant and useful in three cases to date, I awarded 2 levels for this factor.

### 2. Truthfulness, Completeness and Reliability

The government believed that defendant has been truthful. Further, his information had proven highly reliable in locating a murder suspect, arranging a drug deal and searching a residence for drugs. This level of reliability merited a 2 level reduction.

### 3. Nature and Extent

Defendant's cooperation consisted mainly in providing information. He did arrange for one purchase, along with his girlfriend, and provided first hand information that led to the acquisition of a search warrant, but he engaged in no other active cooperation. Thus, I awarded 1 level for this factor.

### 4. Injury or Danger

The evidence suggested that defendant provided information regarding several highly dangerous individuals, which could be traced back to him. However, because he suffered no injury and no actual threats, I awarded 1 level based on risk.

### 5. Timeliness

There was no indication that defendant's cooperation was particularly timely. Therefore, I awarded no further reduction under the fifth factor.

Therefore, the total departure was 6 levels.

## C. Imposition of Sentence

### 1. Section 3553(a)

In imposing sentence, I consider the factors set forth in § 3553(a), which include:

 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

 (2) the need for the sentence imposed–

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

 (4) the advisory guideline range;

 (5) any pertinent policy statements issued by the Sentencing Commission;

 (6) the need to avoid unwarranted sentence disparities; and

 (7) the need to provide restitution to any victims of the offense.

My task is to "'impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2).'" United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005) (quoting 18 U.S.C. § 3553(a)). I typically group the § 3553(a)

factors into three categories: the nature of the offense, the history of the defendant, and the needs of the public and any victims. I analyze each category and in so doing consider the specific statutory factors under § 3553(a), including the advisory guidelines. United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005).

### 2. Section 3553(e)

However, before turning to the above sentencing factors, I first considered the government's argument under 18 U.S.C. § 3553(e). The government argued that in imposing a sentence below the mandatory minimum I could consider only defendant's substantial assistance and not other § 3553(a) factors.

Section 3553(e) states:

> Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e).

In United States v. Thomas, the Seventh Circuit quoted the first sentence of the statute and held: "This language clearly supports the government's view that only factors relating to a defendant's cooperation should influence the extent of a departure for providing substantial assistance under § 3553(e)." 930 F.2d at 529. The district court had also considered the defendant's family responsibilities in departing below the mandatory minimum, and although the court of appeals did not reject out of hand the district court's consideration of that factor under § 3553(e), it determined that a departure based on family circumstances was not permitted under U.S.S.G. § 5H1.6, id. at 529-30, a decision later

8

overruled in Canoy, 38 F.3d at 908. However, in both Canoy and United States v. Thomas (Thomas II), 11 F.3d 732, 736-37 (7th Cir. 1993), the court reiterated the first holding of Thomas I – that only factors relating to a defendant's assistance to the government could affect the extent of a departure from a statutory minimum sentence. See also United States v. DeMaio, 28 F.3d 588, 591 (7th Cir. 1994) ("[O]nce the government files a motion pursuant to 18 U.S.C. § 3553(e), the court may not depart below the mandatory minimum sentence on any other ground except the defendant's substantial assistance to the authorities."). However, none of these cases provided a rationale for this limitation.

The Thomas I court quoted only the first sentence of § 3553(e) in reaching its first holding. It did not address the import of the second sentence – that the resulting "sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code." In United States v. Calle, 796 F. Supp. 853, 861 (D. Md. 1992), the court construed the entire statute and held that, once the government made a motion, "the most sensible interpretation of the statute is that the Court is restored to its function as a full guideline sentencing Court."

In Thomas II, the defendant asked the court to reconsider its holding on this issue in light of Calle. The court declined, noting that three other circuits had reached the same conclusion. See United States v. Campbell, 995 F.2d 173, 175 (10th Cir. 1993); United States v. Valente, 961 F.2d 133, 135 (9th Cir. 1992); United States v. Snelling, 961 F.2d 93, 97 (6th Cir. 1991). Still, these cases did not persuasively address the second sentence of the statute. However, in United States v. Ahlers, 305 F.3d 54 (1st Cir. 2002), the court provided the best explanation for the above interpretation of § 3553(e). The court first noted that, unlike the safety valve provision of § 3553(f), § 3553(e) does not allow the district court

9

to "disregard" the mandatory minimum and sentence in accordance with the otherwise applicable guideline range. Rather, it grants limited authority to sentence below the mandatory minimum to reflect the defendant's substantial assistance. Id. at 59. Second, the court noted that the second sentence began with the words "such sentence." It concluded that the word "such" modified the word "sentence" and referred back to the first sentence. Id. The Ahlers court held:

> Viewed in that light, section 3553(e)'s second textual sentence restricts the court's reference to those guidelines and policy statements that bear directly upon the desirability and extent of a substantial assistance departure. In our opinion, that is why Congress used the adjective 'such' to modify the subject ('sentence') of the second textual sentence. That usage plainly refers back to the penal sentence mentioned in the previous text, that is, a sentence fashioned "so as to reflect the defendant's substantial assistance."

Id. at 61; see also United States v. Auld, 321 F.3d 861, 867 (9th Cir. 2003).[3] Thus, the court in Ahlers provided an interpretation of the statute that gave effect to both sentences.

However, defendant argued that after Booker I was not bound by Thomas and like cases. I disagreed. Booker excised § 3553(b), making the guidelines advisory, but it does not allow district courts to disregard a statutory mandatory minimum. See United States v. Lee, 399 F.3d 864, 866 (7th Cir. 2005). Neither did Booker increase the limited authority provided by § 3553(e). Even if making the guidelines advisory broadened the factors the court could consider under the second sentence of § 3553(e), I nevertheless may reduce "such sentence" below the statutory level only to reflect "substantial assistance." Therefore, I agreed with the government that in reducing a sentence below the mandatory minimum

---

[3]It appears that every circuit has adopted this reading of § 3553(e). See United States v. Bullard, 390 F.3d 413, 416-17 (6th Cir. 2004) (collecting cases).

10

range set by statute, as opposed to the guidelines, I could consider only factors relating to defendant's substantial assistance.

However, under Booker, I may consider § 3553(a) factors in determining whether to follow the guidelines. In the present case, the defendant's guideline range exceeded the mandatory minimum. Thus, I could consider the § 3553(a) factors in determining whether to select a lower guideline range from which to depart, so long as the range was consistent with the statutory mandatory minimum. See United States v. Hayes, 5 F.3d 292, 295 (7th Cir. 1993) (holding that, where the statutory minimum is higher than the guideline range, the court departs from the statutory level, i.e. the lowest offense level that could support the statutory minimum); cf. Auld, 321 F.3d at 867 (opining that, under the mandatory guidelines, the initial point of departure was the guideline range if it exceeded the mandatory minimum). Therefore, I considered the § 3553(a) factors to determine whether to exercise discretion to depart from a lower level consistent with the mandatory minimum, or whether such factors should limit the degree of the departure. See United States v. Mariano, 983 F.2d 1150, 1157 (1st Cir. 1993) (holding that court may deny or limit § 5K1.1 departure based on factors unrelated to substantial assistance).

### 3. Consideration of 3553(a) Factors

#### a. Nature of Offense

Selling crack is obviously very serious criminal conduct. The evidence showed that defendant completed one sale and attempted another to a CI, both in relatively small amounts. He also possessed a firearm unlawfully, though there was no evidence tying the gun to drug dealing. Thus, the offense, while serious, was not particularly aggravated. The

11

drug offense occurred in August and September 2001, and the gun offense in November 2001.

### b.  Character of Defendant

Defendant was 34 years old, a high school graduate, with some additional education in real estate school and computer courses at Bryant and Stratton. He appeared to be a man of some intelligence, who had some skills. Nevertheless, according to the PSR, he had little verifiable employment history.

Defendant had three children with three different women and owed over $40,000 in back child support for one of them. However, the evidence indicated that defendant had made an effort to be a good father to two of his children. I received a letter from defendant's daughter Kayla strongly supportive of defendant.

Defendant was engaged to a woman named Tonika Young. However, their's appeared to be a somewhat turbulent relationship, as the PSR related several physical altercations and a criminal damage to property conviction defendant incurred when he broke Ms. Young's window.

Defendant has assisted in caring for his father who has cancer. I also received letters of support from various family members. For example, defendant's nephew wrote that he treated his girlfriend with kindness and respect like defendant taught him. Defendant's niece indicated that he encouraged her to go to college. This evidence demonstrated that defendant was a positive influence on his younger family members.

I also received letters indicating that defendant acted as a mentor for young men through the Sullivan-Spaights Boys to Men Mentoring Program in 2002 and 2003. The director, Phillip Scott, stated that defendant was sincere in his efforts to help young men stay

12

on the right path. Defendant also worked as an AODA counselor/volunteer at Northwest General Hospital in 1995. Defendant's efforts as a mentor in 2002 and 2003 constituted strong character evidence. However, I was troubled by the fact that defendant could engage in crack dealing after he attempted to assist others with their drug problems in 1995; surely having seen what drugs can do he was well aware of the effects of his conduct in selling drugs in 2001.

Thus, despite some positive character traits, defendant had trouble staying on the right path. He had a fairly serious criminal record, including a prior drug trafficking charge from 1995. Since then, he had been convicted of several misdemeanors and a felony drug possession charge. Defendant pointed out that the instant offenses occurred in 2001 and indicated that he had turned away from crime since then. However, he did pick up a criminal damage to property conviction in October 2003. Therefore, I was uncertain as to whether defendant had turned the corner. At sentencing, he showed some insight into his conduct.

Defendant had some history of substance abuse but did not appear to have a serious problem. His tests while on pre-trial release were negative.

In sum, defendant's character and background presented a somewhat mixed picture.

### c. Needs of Public

Given defendant's criminal record, there was a risk of recidivism. I disagreed with defendant's assertion that his post-offense conduct demonstrated a substantially reduced risk. There was also a need for substantial confinement to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The defendant did not appear to have any particular correctional treatment needs, and there was

13

Case 2:04-cr-00055-LA   Filed 06/16/05   Page 13 of 17   Document 52

no restitution due, though defendant did agree to repay the buy money, which I made a condition of supervised release.

### d. Consideration of Guidelines

The guidelines, prior to departure, called for a term of 108-135 months. As noted, this range was based exclusively on the drug weight and was substantially increased by the fact that defendant dealt crack rather than powder cocaine. As I concluded in <u>United States v. Smith</u>, 359 F. Supp. 2d 771, 777-82 (E. D. Wis. 2005), the manner in which the guidelines treat crack offenders as opposed to powder cocaine defendants is unreasonable and creates unwarranted disparity. Therefore, consistent with the Sentencing Commission's latest recommendation on the issue, in <u>Smith</u> I followed a 20:1 crack-to-powder ratio rather than the 100:1 ratio contained in the guidelines. Defendant asked that I also do so in the present case.

As noted above, my discretion to sentence below 120 months was limited by § 3553(e). However, the government argued that, in addition to the limits on my discretion under § 3553(e), nothing in § 3553(a) gave me the authority to question the 100:1 ratio. I disagreed. Section 3553(a)(2) affords the court discretion to question whether the guideline range is greater than necessary to satisfy the purposes of sentencing, and § 3553(a)(6) permits the court to tailor the sentence to avoid unwarranted disparity. As I explained in <u>Smith</u>, both statutory sub-sections are implicated in crack cases.

First, as I explained more fully in <u>Smith</u>, there is no persuasive penological or scientific justification for treating 1 gram of crack the same as 100 grams of powder. 359 F. Supp. 2d at 777. The Sentencing Commission has studied the issue in depth and concluded that the assumptions underlying the disparity between crack and powder are

unsupported. For example, while some in Congress believed that crack was associated with violence and other harmful conduct, Commission data indicate that aggravating conduct occurs in only a small minority of crack cocaine offenses and that the prevalence of aggravating factors in crack cases does not differ substantially from powder cocaine cases. Id. at 778-79. Further, the Commission has concluded that any pharmacological differences between crack and powder do not justify the disparity in penalties. Id. at 779-80. Finally, the evidence collected by the Commission shows that, in comparison to the mid-80s, the use of crack has decreased. Thus, none of the previously offered reasons for the 100:1 ratio withstand scrutiny. Id. at 780. In light of these well-supported findings by the Commission, a court acts well within its discretion under § 3553(a) in sentencing below the guideline range to account for the unreasonable inflation of sentences called for in crack cases. A court also acts well within its discretion in concluding that the guidelines create unwarranted disparity between crack and powder cocaine defendants.

Second, the evidence shows that the unjustifiably harsh crack penalties disproportionately impact on black defendants. Primarily as the result of the different penalties for crack and powder cocaine, and contrary to one of the Sentencing Reform Act's primary goals, the sentencing guidelines have led to increased disparity between the sentences of black and white defendants. Id. at 780. Further, the disparity in sentences involving crack and powder brings irrationality and the potential for mischief into the criminal justice system, allowing guideline sentences to vary widely depending on whether the offender had yet cooked the powder into crack by the time of arrest. Finally, it results in lesser sentences for large scale suppliers of powder cocaine than the street level crack dealers who exist below them in the hierarchy of distribution. Id. at 780-81. Under §

15

3553(a)(6), courts are instructed to avoid unwarranted disparity. The disparities discussed above cannot be considered justified in a system that prides itself on maintaining reasonable uniformity.

In the present case, given the fact that the guideline range was the product of the crack-powder cocaine disparity, I concluded that the range was greater than necessary to satisfy the purposes of sentencing. In Smith, I sentenced the defendant according to a 20:1 ratio, consistent with the Sentencing Commission's most recent recommendation. 359 F. Supp. 2d at 782. In the present case, use of a 20:1 ratio would have produced a base OL of 26 under U.S.S.G. § 2D1.1(c)(7) and the drug equivalency table, § 2D1.1 cmt. n.10 (81.05g of crack x [200g THC x 20 = 4000g THC] = 324.2 kg of THC). However, because in departing from the statutory mandatory minimum I could consider only those factors bearing on substantial assistance, I was unable to fully account for the disparity.[4] Instead, I departed from the lowest guideline level that supported the mandatory minimum sentence – OL 28. See Hayes, 5 F.3d at 295. This amounted to a one level reduction in offense level. I also concluded that it would be appropriate to depart from OL 28 in order to recognize defendant's community service and family circumstances, which were not taken into account by the guidelines. Defendant's admirable service as a mentor to young men, his assistance to his ill father, and his positive influence on his younger family members merited some consideration. With the 6 level § 5K1.1 departure from OL 28, the range became 51-63 months. A sentence at the low end of that range was, for all of the reasons stated, sufficient but not greater than necessary.

---

[4]The government did not make an argument under § 3553(e) in Smith.

Therefore, I committed defendant to the custody of the Bureau of Prisons for a period of 51 months on counts one and two to run concurrently. Based on his financial situation, I determined that defendant did not have the ability to pay a fine and so waived the fine. Upon release, I ordered defendant to serve a supervised release term of five years on count one and three years on count two, to run concurrently. Additional terms appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 15th day of June, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

17

Case 2:04-cr-00055-LA   Filed 06/16/05   Page 17 of 17   Document 52